UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LLOYD MICHAEL BRANNAN                    CIVIL ACTION

v.                                       NO. 04-2300

ANTHONY AMATO, ET AL.                    SECTION "F"

ORDER AND REASONS

Before the Court is the defendants' motion to dismiss or, alternatively, for summary judgment.  For the reasons that follow, the defendants' motion is DENIED.

Background

Lloyd Michael Brannan sued various defendants, including the Orleans Parish School Board, the superintendent, and other members of the school board in their individual and official capacities for civil rights violations under 42 U.S.C. § 1983, and for violations of state tenure and reduction-in-force statutes, and New Orleans Public Schools policies and procedures.

Mr. Brannan worked for the school board as Director of Maintenance, a middle management position for which he acquired tenure in 1985.  On September 4, 2003, Mr. Brannan was notified by letter that he was "immediately" reassigned because his Director of Maintenance position was eliminated, ostensibly as a result of a

reduction-in-force.[1]   As a Maintenance Technician -- a position which the plaintiff characterizes as nothing more than a painter's helper -- Mr. Brannan was paid the same $50,431.94 salary that he earned as Director of Maintenance.[2]   Mr. Brannan appealed his reassignment in writing.   He contends that he was effectively denied his right to appeal by the failure of the hearing officer to render any decision on his appeal.[3]   No hearing was held.

Mr. Brannan thereafter applied for the newly-created position of Administrator for Maintenance, Custodial Services and Facilities.[4]   But he was never given an interview or opportunity to compete for the position.   It is plaintiff's position that the

---

[1] In Spring 2003, the school board appointed defendant Anthony Amato, Superintendent of the Orleans Parish Public Schools. The board approved Mr. Amato's Reorganization/Reduction in Force Plan, which was created to address a deficit of $30 million dollars for the fiscal year ending June 30, 2002.   The plaintiff believes that the defendants had actually devised a plan to replace various directors from their positions so they could be replaced without adhering to the tenure laws and force reduction policies.

[2] The plaintiff says that he was demoted to a painter's helper without an administrative hearing and that he worked under a technician he had formerly supervised.   His hearing officer never acted on his administrative appeal.

[3] The public schools regulations at §4118.4R(C)(7) require that "...each affected administrator shall be given written notice thereof no less than thirty (30) calendar days prior to the effective date of the proposed layoff or reduction in position...."

[4] This new position was created out of the plaintiff's former Director of Maintenance position, but with the added responsibility for both supervision of facility planning and maintenance.   The plaintiff insists this was his same Director of Maintenance position.

person hired, although an outsider who was less qualified, was given an annual salary of $60,000, which was raised to $90,000.

Mr. Brannan adds that there were other positions, held by persons with less seniority, to which he should have been reassigned according to the public school regulations. On August 11, 2004, the school board posted notices of two job vacancies, one for Deputy Administrator for Maintenance, Facilities, and Custodial Services and another for Maintenance Department Head. The respective salaries for these new positions were $65,000 and $55,000. By posting these jobs without giving the plaintiff the opportunity to attain these positions, the plaintiff contends that the school board knowingly violated state force reduction policy.[5]

The defendants now seek dismissal of the plaintiff's claims for failure to state a claim or, alternatively, for summary judgment. The individual defendants contend that they are shielded by the doctrine of qualified immunity from liability for civil damages.

---

[5] Under the public schools regulations at 4118.4(C)(3), a "tenured certificated administrator whose position is recommended to be abolished in a Reduction in Force shall be entitled to an assignment to a position of equal rank and compensation, if possible, but in any event shall not receive a reduction in pay...." Regulation 4118.41 R(D)(3) provides that "[r]eclassified administrators shall have the right to transfer to positions in their previous job categories for which they are qualified and have greater seniority than those displaced."

I.  <u>Standard for Summary Judgment</u>

Because the parties submitted (and the Court considered) materials outside of the pleadings, the Court treats the defendants' motion as one for summary judgment.  <u>Baker v. Putnam</u>, 75 F.3d 190, 197 (5th Cir. 1996).

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  <u>See</u> <u>id</u>.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  <u>Id</u>. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving

4

party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d
646, 649 (5th Cir. 1992).    Rather, he must come forward with
competent evidence, such as affidavits or depositions, to buttress
his claims.    Id.  Hearsay evidence and unsworn documents do not
qualify as competent opposing evidence.    Martin v. John W. Stone
Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in
evaluating the summary judgment motion, the Court must read the
facts in the light most favorable to the non-moving party.
Anderson, 477 U.S. at 255.

II.

A.  Qualified Immunity

As school board officials, the individual defendants are
immune from suit and liability, unless it is shown that they
violated Mr. Brannan's clearly established constitutional rights.

Qualified immunity shields government officials from liability
for civil damages insofar as their conduct does not violate a
clearly established constitutional right which a reasonable person
would have known to exist.  Harlow v. Fitzgerald, 457 U.S. 800, 818
(1982).

The qualified immunity analysis involves a two-step process.
First, the Court examines whether the plaintiff has alleged a
violation of a clearly established constitutional right.  Shipp v.
McMahon, 234 F.3d 907, 911 (5th Cir. 2000), overruled in part on
other grounds by, McClendon v. City of Columbia, 305 F.3d 314 (5th

5

Cir. 2002).  If the Court determines that the plaintiff has done so, the next step is to determine whether the official's conduct was objectively reasonable at the time of the incident.  <u>Id</u>. at 912.

    1.  Clearly Established Constitutional Right

i.

A determination as to whether a clearly established right has been violated consists of two separate inquiries.  First, the Court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right.  <u>Shipp</u>, 234 F.3d at 912.  If so, the Court then proceeds to determine whether that right was clearly established at the time of the violation.  <u>Id</u>.

Under the first inquiry, to show that Mr. Brannan's procedural due process rights have been violated by his demotion and subsequent failure of reinstatement to his former position, the plaintiff must establish that he had a property interest in continued employment or reinstatement in his specific position.

"Property interests...are not created by the Constitution[;]...they are created and their dimensions are defined," the Supreme Court has written, "by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972).  To have a

6

property interest in a particular benefit protected by due process,
Roth instructs, a person "must have more than a unilateral
expectation of it" and "more than an abstract need or desire for
it." Id. "He must, instead, have a legitimate claim of
entitlement to it." Id. It must have come from an outside
expectation, a force-of-law created expectation. Roth creates a
sharply focused constitutional construct; the Fifth Circuit has
blurred it somewhat.

     "When a public employee has a legitimate entitlement to his
employment," the Fifth Circuit has observed, "the due process
clause may protect as 'property' no more than the status of being
an employee of the governmental employer in question together with
the economic fruits that accompany the position." Jett v. Dallas
Independent School District, 798 F.2d 748, 754, n. 3 (5th Cir.
1986). Indeed, the Fifth Circuit has generally rejected claims of
entitlement to a particular employment position if the claimant
gets the same pay and benefits in the new position. See, e.g.,
Kinsey v. Salado Independent School District, 950 F.2d 988 (5th Cir.
1992) (finding no property interest in the position of
superintendent where the plaintiff fails to point to any provision
of the Texas Education Code or any other rule-making source
bestowing a property interest in the non-economic benefit of the
duties and responsibilities as superintendent); Kelleher v. Flawn,
761 F.2d 1079 (5th Cir. 1985) (finding that instructor demonstrated

no property interest in teaching specific government classes where there was no contract guaranteeing the right to teach those classes).   In other words, in this Circuit, public employees generally have no protectible property interest in their employment *position*, so long as they continue to receive the same salary and benefits in some other employment position, unless, as <u>Roth</u> instructs, some outside expectation or understanding creates a protectible interest.   This conclusion seems to be a faithful balance between <u>Roth</u> and the case literature in the Fifth Circuit.

Because a determination as to what constitutes a protectible property interest is contextual (it can vary according to state law or local regulations), it is not surprising that not all public employees who have remained at the same salary level necessarily fail in this Circuit in their attempt to claim a protectible property interest upon demotion to a different employment position. Indeed, in 1981 the Fifth Circuit held that a government employee who was demoted, but remained at the same salary level, could nevertheless establish a protectible property interest in his job position because there was a mutually-recognized entitlement by reference to local rules and understandings surrounding his employment.   <u>Winkler v. County of DeKalb</u>, 648 F.2d 411 (5th Cir. 1981) (holding that the county code and the conduct of the parties established the existence of rules or mutually explicit understandings supporting the plaintiff's claim of entitlement to

his position).

The plaintiff seeks the shelter of <u>Winkler</u>.  The Court agrees.
Just as Winkler's property interest in his job, entitling him to a
hearing on his demotion, was created and defined by the rules and
understanding concerning his employment with DeKalb County, the
Court finds that Mr. Brannan had a property interest in his
position as Director of Maintenance so long as that position was
available, as created and defined in his case by the rules and
understandings about his employment with the school board.

Mr. Brannan's property interest in his employment was created
and defined by the public schools regulations.[6]  Those rules
provide the basis for Mr. Brannan's claim of entitlement to be
reinstated in a Director of Maintenance position if and when that
position was reinstated following a force reduction.  The public
schools regulations instruct that administrators "whose position is
recommended to be abolished...shall be entitled to an assignment to
a position of equal rank and compensation, if possible."  Going on,
the regulations also provide that those affected by reductions in
position shall receive 30 days notice and have the opportunity to

_____

[6] In <u>Winkler</u>, the Fifth Circuit pointedly wrote:
We have repeatedly stressed that
while a unilateral expectation of a
benefit does not rise to the level
of a protected interest, a mutually
recognized entitlement will receive
constitutional protection.
648 F.2d at 413.

9

appeal the decision.   Finally -- and perhaps the anchor for securing Mr. Brannan's entitlement to his position -- the regulations provide that employees such as Mr. Brannan who are reclassified **"shall have the right** to transfer to positions in their previous job categories for which they are qualified and have greater seniority than those displaced." (emphasis added).   And, one should add, the school board is barred from advertising job vacancies "for a position in a job category affected by a RIF until all persons [who can be recalled] have been recalled...."   It is claimed here that none of the administrative process that is regulation-mandated was observed.

The public schools regulations thus unambiguously secure more than a property interest in employment generally for tenured employees; they specifically create a legitimate claim of entitlement to one's employment position.   Cf. Jett v. Dallas Independent School District, 798 F.2d 748, 754, n. 3 (5th Cir. 1986) (noting that a government employer may specifically create a property interest in a non-economic benefit, such as a particular work assignment, but a property interest in employment generally does not create due process property protection for such benefits).

Accordingly, "[t]he Constitution guarantees...that [Mr. Brannan] may not be deprived of the benefits secured by these rules or understandings without due process of law."   See Winkler, 648 F.2d at 414.

ii.

Because Mr. Brannan had a protectible property interest in his continued employment as instructed by the school regulations, the Court must now decide whether the plaintiff's right was clearly established at the time he was not reinstated.  A right is clearly established when the contours of the right are sufficiently clear so that a reasonable official would understand that what he is doing violates that right.  Anderson v. Creighton, 483 U.S. 635, 641 (1987); Shipp, 234 F.3d at 915.  The official act need not have been previously ruled to be unlawful so long as in light of pre-existing law, the unlawfulness of the act is apparent.  Shipp, 234 F.3d at 915.  And, the claimant need not refer to case precedent that is directly on point, but the Court is confined to precedent from its own Circuit or the Supreme Court unless neither have spoken.  Id.; McClendon v. City of Columbia, 305 F.3d 314 (5th Cir. 2002).

In Brannan's case, the unlawfulness of the superintendent and board members' conduct could reasonably be said to have been readily apparent from case precedent and public school regulations. Again, in Winkler, for example, the employee was transferred to a position that did not encompass the same responsibilities and duties that his prior position had required.  Winkler, 648 F.2d at 414.  The Fifth Circuit held, by reference to the expectation created by the applicable county code, that the employee was

entitled to more than just employment at the same salary; he was entitled to be in a position of like responsibilities.  Id. Winkler is strikingly similar because, here, the public schools regulations clearly require that Mr. Brannan be reinstated in his position whenever it should become available, and that his seniority be honored.

iii.

Unless the law put the superintendent and school board members on notice that their conduct was clearly unlawful in not reinstating Mr. Brannan when they advertised a vacancy in his prior position, summary judgment may still be appropriate.  The Court finds that the state of the law at the time Mr. Brannan was not reinstated should have put the individual defendants on notice -- employees were entitled to due process protections for more than their employment and salary, but only when, as here, an expectation to more than a right to employment generally was created by the rules and understandings surrounding employment.[7]

2.  Objective Reasonableness

For purposes of the second prong of a qualified immunity analysis, the Court examines whether the officials' alleged conduct

_____

[7] Even those decisions finding no property right support this Court's conclusion that the right was clearly established because the reasoning supporting those decisions rested on references to state laws and understandings supplying the source of the right.  Here, that source -- the public schools regulations -- is unambiguous and unconditional, making the contours of the right clear.

12

was objectively reasonable.  The objective reasonableness determination turns on whether a reasonable official could have believed his conduct to be lawful, in light of the clearly established law and the information possessed by the official. Gutierrez v. City of San Antonio, 139 F.3d 441, 447 (5th Cir. 1998).

It seems fair to conclude that objectively reasonable school board officials should have known that they were acting in disregard of clearly established law and the public schools regulations.  Moreover, the objective unreasonableness of the school board officials is supported by the record.  James Lloyd of the Quality Control/Compliance Department circulated a Memorandum acknowledging that the Board may be violating policy with regard to advertising positions at a salary not on the Board's approved schedule and advertising a position to which a tenured employee, specifically naming Mr. Brannan, was entitled.[8]

---

[8] The August 11, 2004 Memo noted:
"The position of Maintenance Department Head is the same position that Mike Brannan, tenured employee, was removed from.  The position has now been recreated for more money annually than Mr. Brannan was paid....  This type of action may cause negative legal action for the district therefore the following is recommended...[r]eturn Mr. Brannan to his position if it is reinstated...[i]f the position remains at the salaries listed, adjustments should be made for the

B.  Other Grounds for Dismissal

The defendants also briefly and rather uncertainly assert other grounds for dismissal of the plaintiff's claims against the individual defendants, most of which are based on the defendants' contention that the plaintiff had no protectible property interest.[9]  Based on its conclusion that the plaintiff did have a property interest in his position, the Court finds the other arguments presented to support dismissal are without merit.

Accordingly, the defendants' motion to dismiss or, alternatively, for summary judgment is DENIED.

New Orleans, Louisiana, April 24, 2006.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

salaries of other Department Heads/Managers employees who are currently paid $50,431.94 and $60,000 annually."

[9]  The defendants also contend that the school board members cannot be liable under LSA-R.S. 9:2792.4, which provides that "members of a board [cannot] be individually liable for any act or omission resulting in damage or injury arising out of the exercise of his judgment...provided he was acting in good faith...unless the damage or injury was caused by his wilful or wanton misconduct."  At this stage, however, the Court finds at least a genuine issue of material fact as to whether the board members were acting in good faith and without wilful misconduct, especially in light of the August 2004 Memo.  Accordingly, the Court declines to grant summary judgment on this ground.

14